I represent the appellants Derrick and Amy Johnson who are present here. This case results from a granting of a motion to dismiss by the lower court for failure to state a claim and failure to allege sufficient acts to support a claim. We believe the primary issue because we believe that there are that have been incorporated by reference that include a tremendous amount of facts including people's names, identity of customers, identity of parties. You've got, help me with this, it seems to me you've got two problems. One is the the problem of agents within a corporation and then you've got the Iqbal and Twombly pleading problem. Which one do you want to start with? Well I think the the most relevant argument is the one in in relation to whether or not attorneys or employees in a corporation could be held liable as co-conspirators. And this this is a Washington law issue is it not? Absolutely it is. Okay and what is your best argument under Washington law that the persons that you accuse of being co-conspirators are not covered within this Washington law exception? You can't you can't conspire against yourself basically. Yeah I don't think Washington law has directly addressed the issue at least not in the way that it's presented in this case. Is there authority to the contrary that suggests that you've got a problem? Well there's there is as far as employees working within a corporation I believe there's there's also those strong a strong trend and courts have recognized that attorneys that are working on behalf of their clients when they engage in or assist their clients in engaging in unlawful or fraudulent conduct can be held as co-conspirators. I thought you needed for co-conspirators for either the employees or the attorneys or both to be acting outside the scope of their employment or agency and here there doesn't seem to be evidence that anyone was acting outside the scope of what they were being paid to do. I don't believe that that is the case. Do you have a case for that? That's what I thought it was the case. In Washington IAC, IAC River Packing Company, one of the ones I was looking at. Yeah in that case the court found that an attorney can be held liable as a co-conspirator. It's a 1927 case but the court said that definitely an attorney can be held liable and declined to reverse the trial court's decision. It does indeed but it says that that's because there was evidence tending to show that in advising his clients and instituting the actions he went beyond his duties as a mere attorney and counseled and advised Axe not in line with his duties. Yes, Your Honor. That's why he could be held liable. Without that, no. Yes, but it's Axe in line. I think that the court interpreted it meaning that he advised his clients to engage in unlawful or conduct that was But it wasn't so much that as Kleinfeld indicated. It was that he acted outside the line of his duties. At least that's how I read that case. What is your understanding of the scope of the attorney's contract, if you will, in this case? And what is there a document that you're relying upon or just your understanding from some other basis? Well, that's difficult and I'm in the complaints just so that the court knows the Sarbanes-Oxley case has gone to trial. We've had an extensive amount of discovery. The judge in that case found waiver of attorney-client privilege. So we had access to a large number of documents. So I know much more today than I did when the complaint was first drafted. And I gather that none of that information is part of the record in this case, right? A little. Some of it is. And to the degree that it is part of the record, can you help me with the question that I asked, which is what were the specific duties of the attorney in this case? And in what way, once we know what those duties were, did he go outside the law in complying with the contract? Okay. So he was, according to U.S. Bank, and U.S. Bank and Mr. Droke with Dorsey Whitney's contentions regarding this, his purpose and his hiring are different. According to U.S. Bank, he was hired as a private investigator or an investigator along with PricewaterhouseCoopers. To find out whether something had gone wrong within the corporation? Yes. That's fairly common, isn't it? It can be for corporations to hire an investigator, an outside investigator. It's almost de rigueur now with public entities that they want to see if they got a housekeeping problem. They hire outside counsel, outside accountants, and they go through and double-check things so that they can find out. And so that the boards can avoid 16a and 16b liability under the 34 Act, among other things. Isn't that true? That's true. Okay. So isn't that what's happening in this case? It's a little more unusual in this case in that Mr. Droke was regular outside counsel for U.S. Bank and had frequently represented U.S. Bank in employment cases. Does that cut one way or the other for purposes of your complaint? The fact that he was a regular counsel? Only in that he had a financial stake in the outcome. Every lawyer that gets hired to do this has a financial stake, doesn't he or she? Yes, but his may be a little bit more because he had a long-standing business relationship with U.S. Bank. So what if he wasn't outside the scope? Well, I think that's where I may be able to explain a little bit. I think outside the scope means or outside duties of regular counsel is when counsel participates in wrongful conduct. Well, but Judge Kleinfeld indicated, if you go back to this case that you've cited, this Yak River case, it makes clear that that person went outside the scope of the duties. And so I asked you initially, that was the lead question, was what were the duties that were given to counsel in this case? Okay. Can you specify what those were? Yeah, he was hired as a private investigator along with Pricewaterhouse Cooper to investigate my client's allegations of wrongdoing. Okay, so that was the, and okay, so that was the, was that in writing? Yes. It was, okay. And is that contract part of the record? I don't believe so. I think that we obtained that during discovery. Starbucks, okay, all right. All right, so you taking that, what specifically did counsel do that was outside the scope of that duty? Mr. Droke assisted U.S. Bank in unlawfully terminating Mr. Johnson in conducting, they conducted initially the investigation, but the investigation wasn't originally limited to Mr. Johnson's allegations, although they did that. When you say, I don't mean to interrupt you, I'm just trying to understand here. Yes. You say he was involved in his termination. The very role of this now very common procedure is you get the investigating lawyer, the investigating accountant, they make, check all this, then they make a report to the board or the senior officers, and they say, this is what we found. Okay. And then a bonus. But the reality is they act on it. That's a normal process, isn't it? Okay. I'm not disagreeing with you. I think the thing that needs to be pointed out, though, is the alleged reason for his termination, that he had opened, and it was that he opened accounts to scam the incentive system, was not part of the original allegations that were made. Well, but I thought, and forgive me if I was wrong, but he was hired to investigate whether your client had been involved in certain wrongdoing. What, did I misunderstand? What was he hired to do? He was hired to investigate the allegations my client had raised of wrongdoing within U.S. Bank. Okay. So when he did that, if he discovered something, I'm just arguendo, he discovered something as part of that process, and say it was this alleged scamming of accounts. I have no idea whether or not it's true, but just say that's what he found. Why would that not be a normal part of the report that he would give? Because that is not something that he found within the process of that, the investigation into the allegations my client raised. I thought the allegations your client raised of wrongdoing were investigated, and it turned out he was doing the wrongdoing, your client. That's what defendants allege. That's not, that isn't, if you read the complaint, what happened is my client alleged various acts of wrongdoing behalf, on behalf of U.S. Bank. Like people setting up phony accounts to get the incentive payments. People opening, it's called scamming, or that it's slamming. So they were opening credit card accounts for clients that did not request them. They were opening bank accounts for clients that did not request them. There was no allegation that my client opened his own personal accounts or family members accounts for people that didn't request them. That wasn't the allegation. And if you look at PricewaterhouseCoopers report, included, it's at ER 27, PricewaterhouseCoopers states that it's not part of DJ's allegations. Well, wait a minute. I certainly understand that there were certain allegations that were made. The attorney and the accountant were hired to investigate that. But is it your position that when there is an investigation to determine something, that the universe that they are limited to is the four walls of the complaint? Is that your position? No. They can't investigate anything else? And as they follow the leads out? Yeah, but there's no evidence they were following any leads out. What happened was my client had an issue with his bank account. He reported it. He reported it to bank personnel. It happened after he was placed on leave, during the time that the investigation was occurring and supposedly into his allegations. He had issues with his bank account. That brought them to start looking at his bank account. They didn't start the investigation into the employees bank accounts until the end of the investigation. The bank is charging repeated and excessive overdraft fees to customers who have checking accounts and write checks on insufficient funds. And it turned out when they investigated that, that your client Johnson was in fact objecting to excessive fees on overdrafts he had written on his account there. And they have nothing to do with each other. And defendants never even alleged that that is what gave rise to the investigation into the employee checking accounts. His allegation regarding the NSF charges had to do with people took fees from an ATM and then were charged and then charged again. They were double charged for overdraft fees. I want to get back and I don't really want to save any time for rebuttal. I just want to get back for a question that we started with here. All of this bears on your pleading. You had a 12 v 6 situation here. Your allegation is that the attorney went outside the scope of this investigation under Twombly and Iqbal. You've got a plea with specificity exactly what was done here. Do you disagree with the trial court that the on was was sufficient to meet the Iqbal and Twombly standard? Yes. As far as the civil conspiracy claims go and the underlying unlawful acts or the acts that they were doing for an unlawful purpose, I believe we did plead those with specificity. We explained the allegations in relation to the mortgage fraud. A whole lot of, excuse me, boilerplate conclusory statements as well. Do you disagree? No, and maybe if you just looked at some of the things in the complaint, they would be that way. But again, we've incorporated PricewaterhouseCoopers findings which list... Remember, the complaint, you don't get a whole lot of other evidence. You have to look at the face of the complaint and I think that's what the court ruled on, wasn't it? No, those documents are attached to the complaint and they were incorporated into the complaint. I see, okay. I'd like to... Let's save the rest of your time. Okay, let's hear from Ms. Shulman. Good morning. May it please the court, I'm Janie Shulman, counsel for Appellees, U.S. Bank Corps and U.S. Bank National Association. Counsel, what this fellow needs is a whistleblower statute. I think there is one in the Sarbanes-Oxley statute, isn't there? There is, Your Honor, and we've litigated that claim. And that's separate from today. Today, the Sarbanes-Oxley claim is not before us because it was not exhausted administratively for us to set it? No, just to clarify the procedural history, Mr. Johnson's employment was terminated in August of 2007. He filed an administrative claim with OSHA under SOX in November 2007. That case had extensive discovery. Well, there were initial investigation by OSHA and findings from which both sides appealed. It was assigned to an ALJ. There was extensive discovery and we tried the case for 12 days. Somebody likes my argument. That's right. We tried the case for 12 days starting April 30th. Before the ALJ? Yes, Your Honor, this year. At the same time this case, the administrative case was proceeding, Mr. Johnson and his wife filed this lawsuit in Washington State Court. The bank removed it in June of 2010. There was a lot of motion practice, but at the same time there was a case, the amended complaint which led to the order of dismissal here was filed five weeks before the close of discovery. And this amended complaint is actually the third try that the Johnsons had at stating a claim. They filed the original complaint in state court. They filed a motion to amend the complaint and attached a proposed amended complaint. That was allowed in part, and then when they filed the amended complaint, they changed it again without permission of the court. And that was another issue. Was it removed on diversity grounds or? Both. Federal? So, but what is the federal claim? Well, it appeared that it alleged a SOX claim again. And that was an argument below that the bank made, which was if Mr. and Mrs. Johnson, if Mr. Johnson is removing his SOX claim to federal court, then he can't have it before the ALJ. And if he wants it before the ALJ, he can't have it in federal court. And so the district court struck the SOX claim to the extent it was an independent claim. And that's part of the problem that Mr. Johnson has now, is that he has no underlying claim. But that's not really before us, is it? No, no. And the SOX action is the one that would have the whistleblower components. Is that correct? Correct. Okay. All right. And I gather the ALJ has not rendered a decision, or perhaps you're still in trial on that. I don't know. We're still doing post-trial briefing, and that, the briefing won't even be submitted, closed until September. Okay. It was a, it was a very extensive and comprehensive trial. So, no matter what the outcome of this case, I want to be clear that Mr. Johnson has had his day in court. He's had 12 days in court and 4,000 pages of testimony. And it's unclear to me what this conspiracy claim is supposed to do, if not retry the SOX claim. The Johnsons did not name Mr. Droke as a defendant in the case initially, even though they knew his role from the last five years of litigation. And the damages they seek on the conspiracy claim are the same as the damages they seek in the underlying SOX claim. Is the SOX complaint in the record somewhere here, so we can compare that, or that just off record at this point? I believe that the, I don't know if it was included as in the underlying excerpts of record. I know the findings of OSHA are in the record. You remember where that is in the record? That would at least give us some underlying complaint, I assume, but I don't know that. I believe it was attached to the amended complaint as Exhibit A. Let me just confirm that. No, Exhibit C. Exhibit C of the amended complaint, beginning at ER 45, are the findings of fact of OSHA on the underlying charge. That's ER 45 in this case, right? Correct. In this record. Okay. Moving over to the, I know we talked about the previous procedural situation. With respect to this case, as you know, Mr. Johnson has alleged a conspiracy with counsel, I presume based upon what counsel indicated, it's on the theory that he exceeded his authority, and therefore that a conspiracy count can lie civilly under Washington law. You've given us your cases and so on. What do you think is your best case or theory that would refute that? I think it's, I actually think it's a three-part theory that shows that Washington law is well settled. The first is it's basic hornbook law that a corporation cannot conspire with itself, and its employees and its agents are itself. And we have cited cases to that effect, Corbett and Alaska SS and Sweeney. So that's the first principle. The second principle is that attorneys are agents of their clients, and we cited the Herman case for that, and it's in footnote 3 of the Herman case. And then the third principle is that when you make an allegation in a pleading, that is an admission of the party. And in the original complaint in this case, the appellants alleged that at all times Mr. Droke was acting as an under penalty of perjury, or this was an un, I don't know what you'd call it here, unverified complaints. How would you call it in Washington law? I'm from California, but I believe it was, I can check it, but I believe it. But in any event, if it's verified, it probably has more credibility. But what you're saying is that when they filed the original, I guess what became the Sox line of cases, that they stated that he was an agent acting on behalf of the corporation. Is that correct? Correct. And for whatever that may be worth, that's an admission against interest or whatever. Correct. And then only when the issue was briefed and they realized, oops, we can't hold Mr. Droke liable for conspiracy if we call him an agent, they then finally in the amended complaint that was ultimately filed, took out that allegation and said that he was hired as an investigator. And Mr. Droke's role has been known to Mr. Johnson since Mr. Johnson interviewed him in 2007 and introduced himself. So none of this is new and should have been in the original complaint. So counsel, is it the case that whether Johnson wins or loses on the state law claims that are before us, he can still win on his Sox claim? Absolutely, Your Honor. The Sox claim is still pending and he can still win on it? Yes. And in addition... I just looked at these findings that you cited once you gave us the excerpts number and it looks like at least at the first stage he won. Correct. Obviously the bank disagrees with the findings, but yes, he may still win the underlying Sox claim and... So he still may win. He may win on his whistleblower status. He may win a recovery. It'll just be Sox instead of state civil conspiracy. Correct, Your Honor. In addition, I'll point out it's not in the record because this happened afterwards, but the Johnsons have filed a third pleading, a third action against the bank alleging Sox retaliation against Mr. Johnson at his subsequent employer, allegedly retaliating against him for winning those findings. And that is in the pleading stage now. It's being litigated as well. Not before us? Not before you, but... So if he wins on that, that would be another source of recovery? Correct. I would also like to point out that the IAC case, I don't agree that that decision actually held that an attorney can be held liable for conspiracy in the way that appellants characterize it. That was not the issue in IAC. That was a decision on a, I believe, a preliminary injunction, and there was an evidentiary hearing, and the question before the court was whether there was substantial evidence to support the ruling. And in that case, nobody ever questioned whether or not an attorney may be held liable as a conspirator. The issue was just whether there was substantial evidence to find that, yeah, this guy was a conspirator. And I'm sure the court at the time, in 1927, was very well qualified, but they didn't cite any authority anywhere in the decision. And so I don't think that IAC can stand for the position, for the proposition that it is a matter of Washington law that attorneys may be held liable. I know that an appellate court has to cite authority. Sometimes the reason you publish is that there is, at the time, no controlling authority. I absolutely agree, but it's rare for me to see an entire lengthy decision with nothing cited anywhere. Marburg versus Madison was kind of like that. True. True, Your Honor. And I concede that that alone is not a basis for saying that the authority isn't binding, but it certainly did not, the court there certainly did not reach the issue that is before the court. Even from your perspective, even if it is, as learned opposing counsel says it is, from your perspective, he still acted within his authority and it doesn't matter. Absolutely. First, as I mentioned before, he's bound by the prior admission in his pleading. And even if he isn't, despite numerous tries at stating a claim, there's nothing in the amended complaint that sets forth actual facts that show that Mr. Droke acted as other than an attorney. He was the regular outside employment counsel for the bank in the Seattle area. Other than as attorney is not enough. For example, if a client hires me to represent him in defending or prosecuting some civil case and just in the course of it, I get interested in the state of his marriage and I hire an investigator and look into the state of his marriage, it's outside the scope of what he hired me for and I'm not his agent for that. Well, it may be within the scope of what he's hired for if part of what he's supposed to do is figure out whether the state of his marriage is relevant to the case, whether it supplies a motive to seek money. So I agree that it's more than just being an attorney. It's an attorney acting within the scope of his engagement. Oh, I see. Yeah, the engagement could bring up something that might bear on it. I get what you mean. And so the attorney may go off and do things on his own, but they still may be within the scope of his engagement as long as the attorney is not, and unfortunately I wasn't counsel who drafted the briefs, but I did take a look at sort of law around the country and the general rule is that the attorney has to be acting solely for his own purpose, solely for his financial benefit in order to be deemed to be acting outside the scope of his agency in many jurisdictions, not everywhere, but in many, many jurisdictions. And here we have an attorney who was hired to counsel the bank about a complaint and to help out with the investigation and that's what he did. And there is nothing in the amended joke did anything differently than that. I have a question on the Twombly-Iqbal issue. I'm looking right now at the judge's order granting the defendant's motion to dismiss. Unless I'm missing something, the court does not focus on a Twombly-Iqbal problem. Was that something that was said orally at the time of hearing on this or what? It was certainly briefed below and unfortunately I was not at the hearing and it wasn't included in the record, but it was definitely briefed below and it was part of the problem with the complaint that there was no, in issues such as no underlying claim for the conspiracy, that no overt action was sufficiently pled. So the Twombly-Iqbal standard was, I believe, addressed. So what you're saying is that that is just kind of an underlying theme that this court didn't necessarily mention, but that was clearly a motivator in that. Correct. Any other questions by my colleagues? Thank you. I wish you have some rebuttal time. Thank you, Your Honor. You know, I would just like to draw the court's attention to both Tensfield and Greenwich, where courts, other state courts have held that an attorney can be held liable when they either aided and abetted or conspired with their clients to engage in unlawful acts. Do you believe that you alleged something of that nature here? Yes. We had alleged that the conduct that occurred in relation to my client was unlawful, unlawful retaliation, and that it was done with the intent to cover up the conduct that was occurring at U.S. Bank. And, you know, this was right at the time of the mortgage issue and everything else. All right. Unfortunately, your time is gone, but we thank you both very much for your arguments. This is an interesting, difficult case. We empathize with the Johnson's. These are hard cases. We assure you that we will do our very best to follow the law and get this correct under Washington law. Thank you both. Thank you, Your Honor.
judges: Schroeder, Kleinfeld, Smith